## Deaton et al. v. Commonwealth.

October 4, 1946.

D. ·C. Howell and E. B. Rose for appellants.

Eldon S. Dummit, Attorney General, H. K. Spear, Assistant Attorney General, and W. L. Kash for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellants, Otis Deaton and Wilburn Williams, were indicted and convicted in the Lee circuit court of the statutory offense created by subsection (4) of section 435.170, KRS, i. e., shooting "at or into * * * any dwelling house", the jury fixing the punishment for each of them at confinement in the penitentiary for two years. They were tried jointly, and their motion for a new trial having been overruled, they prosecute this appeal, complaining through their counsel entirely on the error of the court in overruling their motion for a peremptory instruction finding them not guilty, because the evidence failed to establish their guilt.

The indictment was informally drawn in that its accusatory part did not describe the crime in the language of the statute since it omitted the word "maliciously"; nor did its descriptive part contain that word in the place where it should have been inserted. As drafted it charged that "the said Otis Deaton and Wilburn Williams in the said county of Lee, on the 8th day of February, 1946, and within 12 months before the finding of this indictment, did unlawfully and wilfully and feloniously fire or discharge a shotgun," etc. But later on it said that the shooting was "with the felonious and *malicious* intent to kill said Martha Creech." (Our emphasis.) It would have been better form to have described the shooting as having been done "maliciously" instead of later charging that it was done "with malicious intent." However, we are not inclined to hold that such informality renders the indictment totally defective.

Instruction No. 1 authorized a conviction of each defendant if the jury believed beyond a reasonable doubt that they "shot at or into the dwelling house of Martha Creech where she and her family resides," without any language describing the purpose and intent with which the shooting was done in order to make it a criminal act. Such omission is so glaringly erroneous as to require no supporting cases or authorities. The general rule is that a statutory offense should be charged—both in the indictment and the court's instruction—in the language of the statute, except in some exceptional cases and conditions not appearing in this case. However, there was no complaint made in the motion for a new

trial of either the indictment or the instructions of the court, nor does brief of counsel urge either of them. The only grounds for a reversal stated in the motion for a new trial are (1) error of the court in overruling defendant's motion for an acquittal instruction and (2) the verdict is not supported by the evidence.

Mrs. Creech, the owner of the dwelling alleged to have been shot into, testified that some short while before the finding of the indictment she and the members of her family retired for the night at about 8 p. m. Shortly thereafter she heard the report from firing a shotgun some considerable distance from her residence, and directly thereafter she heard another one apparently closer to her residence. Some thirty minutes later another was fired which appeared to be within a few feet of her residence, and upon the firing of it—which was opposite a window in her residence—some of the glass fell to the floor. Other occupants of the house did not hear the first shot testified to by Mrs. Creech, and some of them did not hear the second one to which she testified, but all of them did hear the third and last shot, and they corroborated her as to the falling of the glass from the window. All of them examined the outside of the window and surrounding walls after the shot was fired, as well as the inside wall of the room opposite the window, and discovered that no shots entered any part of the house, either inside or out, nor was there any wadding of the gun or any sort of the contents of its load found anywhere. Other witnesses who soon thereafter examined the particular window, as well as the inside walls of the room, were likewise unable to find any such implication of a shooting into or through the window, or other part of the walls.

The Commonwealth, after hearing the testimony of all of the inmates of the house at that time, introduced a witness who testified that on the next morning he saw the two defendants in the road passing the Creech house (but did not say how far from it) with one of them carrying a shotgun. Another Commonwealth witness was Floyd Mann who testified that he lived about 200 yards from the Creech house and that some time after dark preceding the alleged shooting the two appellants came to his home with a shotgun and some whiskey, the persons present partaking of the latter, including appel-

lants and Herman Mann, a son of the witness; that they took two or three drinks each; that after tarrying a while the two appellants and Herman Mann, who picked up the shotgun brought there by the appellants, left the house together, saying that they intended to visit the Creech home. In the meantime each member of the trio became considerably under the influence of liquor. The witness, Herman Mann, testified that he was carrying the gun and that as they got immediately contiguous to the Creech house one of the defendants snatched the gun from his hands and fired into the window, followed by the other appellant procuring the gun from his codefendant and firing another shot through the same window.

The two defendants testified as to their whereabouts before the shooting, saying that they, sometime in the afternoon of that day, went rabbit hunting, and late in the evening when it was practically dark they stopped at the residence of Floyd Mann and they corroborated him in the testimony he gave as a witness for the Commonwealth. They also corroborated him as to their departure from his home to visit the Creech home nearby, with Herman Mann accompanying them, and that he, as the carrier of the gun, fired the only shot (the last one) and that neither of them fired it at any time after leaving the residence of Floyd Mann, and that the shooting into the dwelling by Herman Mann was entirely without their consent, or knowledge on their part of his intention to do so.

But, however, such contradictory testimony may be reconciled, if at all, the outstanding and undisputed fact is that there was no physical evidence of any shot having been fired through the window of the Creech residence by any one. The fact that the glass fell from the window on the occasion of the last and close-up shot is undoubtedly established, but that the falling of the glass was caused or produced by a load entering through the window from a shotgun is shown to be physically impossible. Perhaps, and quite possibly so, the firing of the gun at such a short distance from the window produced enough concussion to cause the glass to fall from it, and especially so if it was loosely fastened into its frame, but as to which latter there is no testimony.

In the case of Carter v. Commonwealth, 245 Ky.

257, 53 S. W. 2d 521, 522, we said, under similar conditions of the testimony: "But it is the province of the court to determine whether there is any evidence to support a case or any particular theory of a case, and in so doing to reject any alleged statement of facts inherently impossible and wholly at variance with universally recognized laws."

There are many other cases to the same effect and none to the contrary. Likewise in the case of Fyffe v. Commonwealth, 301 Ky. 165, 190 S. W. 2d 674, we applied our discarding of the "scintilla rule" made in the civil case of Nugent v. Nugent's Ex'r., 281 Ky. 263, 135 S. W. 2d 877, to a criminal prosecution, and which had previously been done in a number of criminal prosecutions since rendering the Nugent opinion. In the Fyffe opinion following the practice as announced in the Nugent case, we said (301 Ky. 165, 190 S. W. 2d 680): "Under our present practice where the court reaches the conclusion that a verdict is flagrantly against the evidence, we rule that there was not sufficient proof to have taken the case to the jury, since the scintilla rule has been abolished."

Indeed, it is extremely doubtful if the testimony in this prosecution raised even a scintilla of proof that either of the appellants even shot the gun at all on the occasion in question. But if they did then it is thoroughly established that it was neither aimed at, nor that the load passed through the window, since the physical facts totally disproved any such alleged guilty shooting. It follows, therefore, that the court should have sustained appellants' motion for a directed acquittal and for which reason the judgment is reversed with directions to set it aside, and if the evidence is in substance the same on another trial, if one is had, defendants' motion should be sustained. Likewise if another trial should be had the court should frame its instruction No. 1 so as to conform to the requirements outlined in this opinion.